# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| and | ) ) | |
| RODNEY GRAVES, | ) | Case No. 04-1084-CV-W-GAF |
| Plaintiff-Intervenor | ) ) ) | |
| vs. | ) ) ) | |
| UMB BANK, N.A., | ) ) | |
| Defendant. | ) | |

## ORDER

Presently before the Court is a Motion for Partial Summary Judgment, filed pursuant to Fed. R. Civ. P. 56(c) ("Rule 56(c)") by Plaintiff, Equal Employment Opportunity Commission (the "EEOC"). (Doc. #61). The EEOC moves the Court for summary judgment on the issue of whether it made a good faith effort to conciliate Plaintiff-Intervenor Rodney Graves' ("Graves") charge of employment discrimination as required under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq* ("Title VII"). Id. The EEOC argues that it is entitled to summary judgment on this issue because the undisputed facts establish that it made a good faith effort to conciliate Graves' charge of discrimination. Id. Defendant, UMB Bank, N.A. ("UMB") opposes this Motion, arguing that partial summary judgment should not be granted because the EEOC did not make a good faith effort to conciliate Graves' charge of employment discrimination before filing suit. (Doc. #73). Having reviewed the evidence submitted by the parties, the

EEOC's Motion is DENIED and this case is STAYED for a period of sixty (60) days from the date of this Order.

**DISCUSSION**

**I. Facts**

This case arises from the EEOC's allegations that UMB discriminated against Graves in violation of the Americans with Disabilities Act ("ADA") by refusing to hire him for a Customer Service Representative[1] position based on his disability[2]. (Doc. #1). In its complaint, the EEOC asserts that "all conditions precedent to the institution of this lawsuit have been fulfilled." Id. UMB denied this averment in its answer. (Doc. #7). The issue presented in the instant Motion is whether the EEOC engaged in good faith efforts to conciliate Graves' charge of employment discrimination prior to filing suit, as required by Title VII, 42 U.S.C. § 2000(e)-5(b). (Doc. #61-1).

Graves filed his charge of discrimination on April 8, 2003. (Doc. #73-1). On April 21, 2003, UMB submitted a timely response to the charge. (Bretches Depo. 25: 3-24). Based on UMB's response, EEOC investigator Mark Bretches ("Bretches") was aware that UMB's position was that it did not hire Graves because he was not able to perform the essential functions of the job for which he applied. (Bretches Depo. 30:1-6). Bretches also understood UMB's position to be that Graves discussed his need for voice recognition software in order to perform the Customer Service Representative job, but that voice recognition software was not a viable accommodation. (Bretches Depo. 27: 11-30:6). Conversely,

---

[1]The Customer Service Representative is required to talk on the telephone to customers and simultaneously use a computer. (Doc. #61-10, #61-13).

[2]Graves is a quadriplegic. (Doc. #73-3)

Bretches understood Graves' position to be that he did not need voice recognition software to perform the Customer Service Representative job. (Bretches Depo. 35:16-23).

On March 24, 2004, Bretches left a voicemail for UMB Human Resources Officer Shannon Andresen-Johnson ("Andresen-Johnson"), stating that the EEOC found reasonable cause to believe that Graves had been discriminated against by UMB on the basis of disability. (Andresen-Johnson Depo. 36:9-13). On March 25, 2004, a teleconference took place between Bretches, Andresen-Johnson, UMB Corporate Counsel Peter Granat ("Granat"), and UMB Senior Vice President of Employee Relations James Rawlings ("Rawlings"). (Doc. #73-5). During this teleconference, Bretches explained that it was Graves' position that he did not need voice recognition software. (Andresen-Johnson Depo. 37:5-9). UMB informed Bretches that this was the first UMB had learned of Graves' contention that he did not need voice recognition software to do the job. (Andresen-Johnson Depo. 36:7-38:13; 42: 10-18; Doc. #73-5). Bretches explained that UMB would have the opportunity to discuss this concern during the conciliation process. (Andresen-Johnson Depo. 43: 10-25; 152:8-153:1; 160:24-161:4; Doc. #73-5). Granat and Andresen-Johnson requested a meeting with Bretches and Graves regarding the issue of voice recognition software. (Andresen-Johnson Depo. 37:12-38:18). Bretches indicated that he would look into whether a meeting would be an option. Id.

On April 14, 2004, the EEOC issued a Letter of Determination, in which it stated that "[t]he evidence obtained during the investigation establishes violations of the ADA in that Respondent failed to hire Charging Party because of his disability." (Doc. #61-2). In its Letter of Determination, the EEOC invited UMB to resolve the matter by informal methods of conciliation. Id. On June 11, 2004, UMB's Vice President of Human Resources, Sharmyn Calhoun ("Calhoun") sent an e-mail to Bretches, in which

3

Calhoun wrote that UMB "[w]ould welcome the opportunity to conciliate this matter with the [EEOC] and Mr. Graves." (Doc. #61-7).

Sometime shortly thereafter, Granat spoke with Bretches by telephone to discuss the EEOC's findings and the conciliation process. (Doc. #73-1). Bretches communicated a $3,000,000 settlement demand on behalf of Graves. Id. Granat understood this settlement demand to be non-negotiable. Id. Granat told Bretches that UMB would not be willing to resolve the matter for $3,000,000, and that it would be fruitless for UMB to respond to a $3,000,000 demand. Id. On June 30, 2004, EEOC District Director Lynn Bruner ("Bruner") sent a letter to Graves which stated, "EEOC has determined that efforts to conciliate have been unsuccessful. This letter constitutes notice that the [EEOC] has determined that conciliation had failed." (Doc. #61-8). Bruner's letter also stated that "no further efforts to conciliate will be made by EEOC" and that the EEOC was "forwarding the case to the Regional Attorney for litigation consideration." Id. Granat was copied on this correspondence. Id.

On July 29, 2004, Bretches sent a letter to Granat, stating:

> To clarify our conciliation proposal, please be advised that the EEOC's damage demands are limited by the caps set forth in the Civil Rights Act of 1991. Having said that, the EEOC is willing to conciliate this charge now for backpay for Mr. Graves in the amount of $43,680.00 ($480 per week from November 1, 2002 to July 31, 2004) plus the weekly cost to [UMB] for the same period for any and all fringe benefits that Charging Party would have been entitled to if he had been hired. In addition, the EEOC is seeking $300,000.00 in compensatory damages, the maximum allowed by the applicable statutory cap. The Commission also asks [UMB] to hire [Graves] as a Customer Support & Sales Agent and to provide ADA training to all of its managers and supervisors.
> Please understand, however, that Mr. Graves continues to demand $3,000,000 to resolve this case and that [UMB's] unilateral conciliation with the EEOC would not effect his right to pursue private litigation.

4

(Doc. #61-9). Bretches' July 29, 2004 letter was the first time the EEOC's conciliation proposal, as opposed to Graves' conciliation proposal, was communicated to UMB. (Bretches Depo. 47:11-48:23; 52:20-53:10).

On July 30, 2004, Granat sent correspondence to Bruner, explaining that UMB was unaware that Graves did not need voice recognition software to perform the essential functions of the job until Bretches first informed UMB of the results of the EEOC's investigation. (Doc. #61-10). On or around August 5, 2004, Granat spoke with Bretches over the telephone regarding the settlement proposals of both the EEOC and Graves. (Doc. #73-5). During that conversation, Granat expressed UMB's willingness to conciliate and told Bretches that UMB would respond to the EEOC's new conciliation proposal. Id. Regarding Graves' settlement demand of $3,000,000, Granat told Bretches that UMB would not simply open its checkbook and give Graves a $3,000,000 handout. Id.

On August 18, 2004, Bretches sent correspondence to Granat responding to the points Granat raised in his letter of July 30, 2004. (Doc. #61-11). On August 30, 2004, Bretches sent correspondence to Granat asking Granat to forward UMB's conciliation proposal by September 7, 2004, and stating that Bretches would assume that UMB was no longer interested in conciliation if he did not hear from Granat by September 7, 2004. (Doc. #61-12). The same day, Granat sent correspondence indicating that UMB intended to respond to the EEOC's proposal but was unsure whether it could do so by September 7. (Doc. #61-13).

On September 15, 2004, Granat sent a letter to Bruner and forwarded a copy of a telephone interview with William Hawkins ("Hawkins"), the UMB employee who interviewed Graves and would have been his supervisor had Graves been hired. (Doc. #61-14). Granat indicated that there had possibly been

5

a "failure to communicate" with respect to the possible hiring of Graves and offered Graves the chance to return to UMB and see if Graves could perform the essential functions of the job. Id. Accordingly, Granat stated that UMB was willing to offer Graves the position he applied for as long as he was able to fulfill the essential functions of the position. (Doc. #61-14). On September 28, 2004, Bruner sent a letter to Granat, stating that Hawkins' telephone interview did not change the EEOC's view of the merits of the case. (Doc. #61-15). Bruner asked Granat to communicate UMB's conciliation proposal to Bretches by October 8, 2004 and stated that if the EEOC did not hear from UMB within that time period, the EEOC would consider conciliation efforts to have failed. Id.

On October 1, 2004, Granat sent correspondence to Bretches, reiterating UMB's proposal to employ Graves in the position for which he applied if he was able to perform the essential functions of the job. (Doc. #61-16). Granat's letter further stated that UMB wished to meet with Bretches and Graves and, in the event that Graves could not carry out the essential functions of the job for which he applied, UMB was willing for Graves to apply for other available positions for which Graves was qualified. Id. On October 5, 2004, Bruner sent a letter to Granat stating that the EEOC had determined that efforts to conciliate had been unsuccessful and that no further conciliation effort would be made. (Doc. #61-17).

Granat sent Bruner a letter on October 7, 2004 emphasizing UMB's continued willingness to conciliate. (Doc. #61-18). On October 15, 2004, Bruner, by Billie Ashton ("Ashton"), sent Granat a letter indicating that the EEOC was forwarding the case to headquarters for possible litigation but that the EEOC would consider any further settlement proposal that UMB wished to make. (Doc. #61-19). On November 5, Granat sent Ashton a letter indicating that it would offer $15,000 to resolve the case and reiterating UMB's desire to meet in person to discuss the issues involved. (Doc. #61-20). Robert Johnson

6

("Johnson"), Regional Attorney for the EEOC, responded by a letter dated November 10, 2004. (Doc. #61-21). Johnson indicated that the EEOC would lower its $300,000 offer to $295,000 but that it did not believe a meeting would be fruitful in light of the fact that the parties were very far apart in terms of a monetary settlement. Id.

On November 10, 2004, Granat sent a letter to Johnson, again conveying UMB's willingness to conciliate and UMB's request for a face to face meeting. (Doc. #61-22). Johnson responded on November 19, 2004 indicating that the EEOC would still consider any further settlement offers that UMB wished to make, but noted that "the time for a confidential settlement grows ever shorter." (Doc. #61-23). The EEOC filed suit on December 1, 2004. (Doc. #1).

**II.     Standard**

Under Rule 56(c), summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When the evidence supports conflicting conclusions, a genuine issue of material fact exists and summary judgment should be denied. Kells v. Sinclair Buick—GMC Truck, Inc., 210 F.3d 827 (8th Cir. 2000). When considering this Motion, the Court views all facts in the light most favorable to UMB and gives it the benefit of all reasonable inferences. *See* Prudential Ins. Co., 121 F.3d at 366.

In the instant case, EEOC is asking this Court for a declaration that, as a matter of law, it engaged in sufficient efforts to conciliate Graves' charge of employment discrimination as required by Title VII. However, if the Court finds that the EEOC's conciliation efforts were insufficient to comply with the requirements set forth in Title VII, dismissal is too harsh a remedy in the absence of grossly unreasonable

7

conduct or substantial prejudice to UMB. *See* EEOC v. Klinger Elec. Corp., 636 F.2d 104, 107 (5th Cir. 1981). Instead, the appropriate remedy is to temporarily stay the action, as permitted by 42 U.S.C. § 2000e-5(f)(1), thus requiring the parties to resume conciliation efforts. Id.

**III.    Analysis**

Under Title VII, the EEOC is obligated to conciliate in good faith before filing suit. 42 U.S.C. § 2000(e)-5(b); EEOC v. Asplundh Tree Expert Co., 340 F.3d 1256, 1260 (11th Cir. 2003) ("[t]he duty to conciliate is at the heart of Title VII") (citations omitted); EEOC v. Keco Indus., Inc., 748 F.2d 1097, 1102 (6th Cir. 1984). The EEOC's statutory duty to conciliate embodies "the congressional intent that enforcement be effected wherever possible without resorting to formal litigation." Marshall v. Sun Oil Co., 592 F.2d 563, 565 (10th Cir. 1979). One court described the purpose of the conciliation process as follows:

> [I]t is clear that Congress placed great emphasis upon private settlement and the elimination of unfair practices without litigation on the ground that voluntary compliance is preferable to court action. Indeed, it is apparent that the primary role of the EEOC is to seek elimination of unlawful employment practices by informal means leading to voluntary compliance.

Hutchines v. United States Indus., 428 F.2d 303, 309 (5th Cir. 1970) (citations omitted).

To satisfy the statutory requirement of good faith conciliation, the EEOC must "(1) outline to the employer the reasonable cause for its belief that the law has been violated; (2) offer an opportunity for voluntary compliance; and (3) respond in a reasonable and flexible manner to the reasonable attitudes of the employer." Asplundh, 340 F.3d at 1259 *quoting* EEOC v. Klinger Electric Corp., 636 F.2d 104, 107 (5th Cir. 1981); EEOC v. Johnson & Higgins, Inc., 91 F.3d 1529, 1534 (2nd Cir. 1996); EEOC v. One Bratenahl Place Condominium Assoc., 644 F.Supp 218, 221 (N.D. Ohio 1986). Whether the EEOC has

8

adequately fulfilled its obligation to conciliate is dependent upon the "reasonableness and responsiveness of the [EEOC's] conduct under all the circumstances." Asplundh, 340 F.3d at 1259 *quoting* Klinger, 636 F.2d at 107; *see also* EEOC v. Sears, Roebuck & Co., 650 F.2d 14, 19 (2nd Cir. 1981). The EEOC's efforts should be considered sufficient if it made a sincere and reasonable attempt to negotiate by providing UMB with an "adequate opportunity to respond to all charges and negotiate possible settlements." Bratenahl, 644 F.Supp. at 220 *quoting* Marshall v. Hartford Fire Ins. Co., 78 F.R.D. 97, 107 (D.C. Conn. 1978).

In the instant case, the EEOC argues that the undisputed facts establish that, as a matter of law, the EEOC made good faith efforts to conciliate. UMB argues that, in light of UMB's repeated requests for a face-to-face meeting, the EEOC's refusal to conduct a face-to-face meeting is evidence of the EEOC's unreasonableness and lack of good faith. Indeed, the EEOC's efforts to conciliate have been found to be inadequate where the EEOC has refused to meet with the employer. *See*, *e.g.*, EEOC v. Pacific Maritime Assoc., 188 F.R.D. 379, 380-81 (D. Or. 1999) (no good faith conciliation where the EEOC failed to explain the basis for its damages calculation and refused several requests by the employer to schedule a face-to-face meeting); EEOC v. First Midwest Bank, N.A., 14 F.Supp. 2d 1028, 1032-1033 (N.D. Ill. 1998) (no good faith effort to conciliate where EEOC refused to meet with employer despite repeated requests); Bratenahl, 644 F.Supp. at 221 (no good faith conciliation where employer "indicated its willingness to meet and negotiate a conciliation [and] [s]uch a meeting would have provided a forum for the free exchange of ideas and proposals to hopefully reach mutually accepted remedies"). Though face-to face conciliation meetings are not statutorily required, "failure to hold a conciliation conference has been

9

an important factor in determining that [the EEOC] has not fulfilled its statutory duty to conciliate." EEOC v. Hugin Sweda, Inc., 750 F.Supp. 165, 167 (D. N.J. 1990) (citations omitted).

In the instant case, the Court finds that it was unreasonable of the EEOC to refuse UMB's repeated requests for a conciliation conference. At the heart of this case is Graves' ability, or lack thereof, to perform the essential functions of the position for which he applied. Although the EEOC sent letters, held phone conferences, and solicited monetary offers from UMB, the EEOC nevertheless refused UMB the opportunity to evaluate the crucial issue of whether Graves was in fact capable of performing the essential functions of the position for which he applied.

The EEOC provided UMB with no basis for its conclusion that Graves did not require voice recognition software, other than Graves' own assertion that such software was not required. Without the opportunity to assess Graves' ability to perform the Customer Service Representative position, UMB had no foundation from which to engage in meaningful conciliation discussions or to generate a conciliation proposal. Accordingly, the Court finds that the EEOC denied UMB an "adequate opportunity to respond to all charges and negotiate possible settlements," Bratenahl, 644 F.Supp. at 220, and that the EEOC did not respond in a "reasonable and flexible manner to the reasonable attitudes of the employer." Asplundh, 340 F.3d at 1259. Therefore, partial summary judgment in favor of the EEOC is not appropriate.

## CONCLUSION

The Court finds that the EEOC's refusal to meet with UMB regarding Graves' claim and his ability to perform the essential functions of the position for which he applied was not reasonable under the circumstances. Accordingly, the EEOC's Motion for Partial Summary Judgment is DENIED and this case is hereby STAYED for a period of sixty (60) days from the entry of this Order.

**IT IS SO ORDERED.**

<u>/s/ Gary A. Fenner</u>
GARY A. FENNER, JUDGE
 United States District Court

DATED:   **March 17, 2006**